# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60153

United States Court of Appeals
Fifth Circuit

**FILED**
June 12, 2019

Lyle W. Cayce
Clerk

LIMEI HAN,

Petitioner

v.

WILLIAM P. BARR, U. S. Attorney General,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A201 210 433

Before HAYNES, GRAVES, and DUNCAN, Circuit Judges.

PER CURIAM:[*]

Petitioner Limei Han ("Han") petitions for review of the dismissal of her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Han's application turned on a claim that she was forced to abort her second child by the Chinese government in 1994, but an immigration judge denied her application based in part on its finding that Han's account was not credible. The BIA found no clear error in the IJ's credibility determination. We deny the petition for review.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60153

I.

Han is a native and citizen of China who entered the United States in February 2011 on a tourist visa that expired August 27, 2011. Shortly before that, on July 20, 2011, she applied for asylum, withholding of removal, and relief under the CAT. In a written statement accompanying her application, Han claimed that in 1994, when she was seven weeks pregnant with her and her husband's second child, she was forced to abort the child under China's one-child policy.

In November 2011, Han interviewed through an interpreter with a Department of Homeland Security Asylum Officer. The officer denied her claims as "not credible" in light of "[m]aterial inconsistency(ies)" in her testimony and "[l]ack of detail(s) on material points." The officer referred Han's application to an immigration judge ("IJ") and charged her with being removable under 8 U.S.C. § 1227(a)(1)(B) for having overstayed her visa. *See* 8 C.F.R. § 208.14(c)(1). In subsequent proceedings before two different IJs, Han was represented by counsel and received the aid of a Mandarin-to-English interpreter. At a hearing in 2014 before an IJ in California, Han conceded removability for having overstayed her visa, but renewed her application for asylum, withholding, and CAT protection. Her case was subsequently transferred to Texas, where her removal hearing took place before a different IJ in January 2017.

At this hearing, Han also testified through an interpreter and was represented by counsel. Han's testimony revealed numerous inconsistencies with her previous written statement and her oral responses to the asylum officer. Some of the inconsistencies concerned whether Han had removed a contraceptive device herself or had it removed at a clinic, and whether Han had sought visas to leave China before 2010. Others concerned the date of the

abortion (she asserted one date, while documents revealed another); whether her second pregnancy resulted from marital rape (at one point she claimed it had, then equivocated); and whether she and her husband divorced following the abortion (she claimed they had, but documents showed otherwise). Additionally, Han explained that she had worked in the postal service's family planning unit where her job was to "enforce [the] national family planning policy and [monitor] who is pregnant or not." Her duties included "educating" women with second pregnancies that they should comply with China's one-child policy and alerting government authorities if they did not comply. Han explained, however, that she had never personally participated in a forced abortion.

On May 23, 2017, the IJ ruled that Han was not entitled to any relief essentially for two reasons. First, the IJ determined that, because Han had participated in China's family planning regime and referred non-compliant women to government officials, she was subject to the so-called "persecutor bar." *See* 8 U.S.C. § 1158(b)(2)(A)(i) (providing alien ineligible for asylum if the Attorney General determines that she "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion"); *id.* § 1231(b)(3)(B)(i) (providing withholding of removal protections may not apply if Attorney General determines that "the alien ordered, incited, assisted, or otherwise participated in the persecution of an individual because of the individual's race, religion, nationality, membership in a particular social group, or political opinion"). Lacking any precedent from our court, the IJ adopted the Second Circuit's test for applying the persecutor bar and concluded Han qualified. *See Suzhen Meng v. Holder,* 770 F.3d 1071, 1073 (2d Cir. 2014) (persecutor bar applies if "(1) the alien [was] involved in acts of persecution;

No. 18-60153

(2) a nexus [is] shown between the persecution and the victim's race, religion, nationality, membership in a particular social group, or political opinion; (3) if the alien did not [herself] incite, order, or actively carry out the persecution, her conduct must have assisted the persecution; and (4) the alien must have had sufficient knowledge that . . . her actions may assist in persecution to make those actions culpable" (internal citation and quotation marks omitted)). Second, in the alternative, the IJ determined that Han was entitled to no relief because she was not credible. The IJ found that several of Han's exhibits were of "questionable authenticity or accuracy" and directly contradicted her testimony. Additionally, the IJ found that Han contradicted herself several times with respect to significant facts, such as the timing of her abortion and whether her second pregnancy was the result of rape.

Han appealed to the BIA. The BIA found no clear error in the IJ's adverse credibility determinations, which were "based on specific and cogent reasons, including significant inconsistencies in [Han's] testimony." Additionally, the BIA affirmed on the alternative ground that Han was ineligible for asylum and withholding of removal under the persecutor bar. Finally, the BIA affirmed the IJ's denial of relief under the CAT based on the IJ's finding that Han did not credibly show she had been tortured in China, nor showed she would likely be tortured there in the future. The BIA therefore dismissed the appeal, and Han timely petitioned this court for review.

II.

We review the BIA's decision, as well as the IJ's decision to the extent it "ha[d] some impact on the BIA's decision." *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). Findings of fact are reviewed for substantial evidence, while legal conclusions are reviewed *de novo. Soriano v. Gonzales*, 484 F.3d 318, 320 (5th Cir. 2007). The substantial evidence standard requires affirmance unless

4

the "evidence compels a contrary conclusion." *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996). When reviewing a finding that an alien was not credible, we consider only whether the "record *compels* belief in her story." *Wang*, 569 F.3d at 539 (emphasis in original). We defer to the trier of fact's credibility determination "unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Id.* at 538 (internal quotation marks and citation omitted).

## III.

On appeal, Han argues that the BIA and IJ erred in dismissing her asylum and withholding claims under the persecutor bar. She also argues that those tribunals clearly erred in finding Han's testimony not credible. We resolve this appeal on the credibility issue only and therefore need not reach the persecutor bar issue.[1]

---

[1] In addition to the Second Circuit analysis adopted by the IJ in this case, other circuits have crafted a variety of approaches to applying the persecutor bar. For example, the Fourth Circuit requires (1) a "nexus between the alien's actions and the persecution of others, such that the alien can fairly be characterized as having actually assisted or otherwise participated in that persecution," and (2) a showing that the alien acted with scienter or with "some level of prior or contemporaneous knowledge that the persecution was being conducted." *Quitanilla v. Holder*, 758 F.3d 570, 577 (4th Cir. 2014) (internal citation and quotation marks omitted); *see also Abdallahi v. Holder*, 690 F.3d 467, 476 (6th Cir. 2012) (employing essentially the same two-factor test as the Fourth Circuit). The Ninth Circuit asks (1) "whether the petitioner's involvement was active or passive"; and (2) "whether the petitioner's acts were material to the persecutory end." *Kumar v. Holder*, 728 F.3d 993, 998–99 (9th Cir. 2013). In the Seventh Circuit, "the record must reveal that the alien *actually* assisted or otherwise participated in the persecution of another on account of race, religion, nationality, membership in a particular social group, or political opinion." *Singh v. Gonzales*, 417 F.3d 736, 740 (7th Cir. 2005) (emphasis in original). The First Circuit has not articulated a full-blown test but has explained that "the persecutor bar applies to an alien who knowingly and willingly aided in persecution, [even if she] did so without a persecutory motivation." *Alvarado v. Whitaker*, 914 F.3d 8, 13 (1st Cir. 2019). The Eleventh Circuit employs "a particularized, fact-specific inquiry into whether the applicant's personal conduct was merely indirect, peripheral and inconsequential association or was active, direct and integral to the underlying persecution." *Chen v. United States Att'y Gen.*, 513 F.3d 1255, 1258 (11th Cir. 2008). Finally, the Third Circuit has applied the Second Circuit's four-factor test in an unpublished opinion. *Chen v. Att'y Gen. of United States*, 622 F. App'x 155, 162 (3d Cir. 2015).

No. 18-60153

A woman who was forced by government authorities to abort her unborn child is presumptively eligible for asylum or withholding of removal. *See, e.g., Zhu v. Gonzales*, 493 F.3d 588, 597 & n.39 (5th Cir. 2007) (explaining "'a person who has been forced to abort a pregnancy . . . shall be deemed to have been persecuted on account of political opinion'") (quoting 8 U.S.C. § 1101(a)(42)). It is therefore critical that an IJ determine whether a woman's claim of forced abortion is credible. *See* 8 C.F.R. § 208.13(a) (placing burden of proof on asylum applicant to establish refugee status and providing that "the testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration"); 8 C.F.R. § 208.16(b) (same for withholding of removal); *see also, e.g., Chun v. INS*, 40 F.3d 76 (5th Cir. 1994) (affirming BIA's denial of a forced abortion claim where "[w]ithout credible evidence, the BIA had no basis upon which to grant asylum or withhold deportation"). Here, the IJ assessed Han's live testimony, weighed it against her previous statements and her documentary evidence, and determined that her account was not credible in light of multiple inconsistencies and internal contradictions which the IJ specified. The BIA found no clear error in the IJ's determination. On appeal, Han contests these conclusions, arguing that her testimony and written statement established her claims, and that any inconsistencies in her account were merely the result of typographical or clerical errors by the Chinese government, her own confusion and nervousness, simple exaggeration on her part (with respect to a claim that her husband raped her), miscommunication, and memory lapses.

Han's arguments cannot overcome the deference we must afford to the IJ's credibility determinations. Her application is governed by the REAL ID

---

Because we resolve this appeal based on the IJ's credibility determination, we do not address which of these various formulations, if any, is the correct one.

Act ("Act"), which became effective on May 11, 2005 and applies to all applications filed on or after that date. *See* 8 U.S.C. § 1158; *see also Wang*, 569 F.3d at 537. Under the Act, an applicant's testimony may be sufficient to sustain the burden of proving eligibility for asylum, "but only if the applicant satisfies the trier of fact that [her] testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). The Act amended the standards for assessing credibility to "provide more discretion to the IJ in determining credibility of witnesses." *Wang,* 569 F.3d 537–38. In doing so, the Act departed from previous standards requiring adverse credibility determinations to be based on inconsistencies going "to the heart of" an applicant's claim. *Id.* at 537. The Act, by contrast, requires the trier of fact to consider "the totality of the circumstances" and "all relevant factors" in making a credibility determination. 8 U.S.C. § 1158(b)(1)(B)(iii). Relevant factors include the applicant's "demeanor, candor, or responsiveness," the "inherent plausibility" of her account, the "consistency between [her] written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made)," and "any inaccuracies or falsehoods in such statements." *Id.* Critically, the "IJ may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the totality of the circumstances establishes that an asylum applicant is not credible." *Wang*, 569 F.3d at 538 (internal quotation marks and citation omitted).

The IJ acted squarely within the authority granted by the Act in finding Han's account not credible and therefore denying her claims. We cannot disturb that finding on appeal. "Nothing in [Han's] story compels a conclusion in her favor or supports a conclusion by this court—one far removed from the

No. 18-60153

hearing room—that no reasonable factfinder could disbelieve [Han]." *Wang*, 569 F.3d at 540; *see also, e.g., Dayo v. Holder*, 687 F.3d 653, 657 (5th Cir. 2012) ("Dayo's only evidence that he suffered past persecution came from his own testimony, so if the BIA's determination that he lacked credibility is supported, Dayo does not have enough evidence to show past persecution.").[2]

The petition for review is DENIED.

---

[2] For essentially the same reasons, we affirm the BIA's denial of relief under the CAT. *See, e.g., Ghotra v. Whitaker,* 912 F.3d 284, 289–290 (5th Cir. 2019) (affirming BIA's denial of CAT relief where the "application for protection under CAT [was] premised on the same factual situation as [the] application for asylum" and applicant was deemed not credible).